UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **RENE OSWALD COBAR,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1222 (ESH) |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Rene Oswald Cobar has sued the United States Department of Justice ("DOJ"), alleging that it has violated the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"). (Compl., Aug. 13, 2012 [ECF No. 12].) Before the Court is defendant's motion for summary judgment (Def. Mot., Nov. 26, 2012 [ECF No. 22]), plaintiff's opposition (Pl. Opp., Jan. 2, 2013 [ECF No. 24]), and defendant's reply (Def. Reply, Jan. 14, 2013 [ECF No. 25].) For the reasons discussed below, defendant's motion will be denied.

## BACKGROUND

In October 2011, plaintiff submitted a request under the FOIA to the Drug Enforcement Administration ("DEA") seeking information about a third party, Carlos Javier Aguilar-Alvarez, whom plaintiff identified as a DEA "confidential informant." (Compl. at 2; *id.*, Ex. A ("FOIA Request"), at 1.) Plaintiff's request sought "full disclosure and release of records and information contained in the files of your Agency concerning . . . Carlos Javier Aguilar-Alvarez," specifically, but not limited to, his "criminal records," his "activation" in October 2003 and his "deactivation" in February 2009 as a "confidential informant ("CI")" "(# CS-01-

102375)," his "signed" "DEA-CI cooperation contract (DEA-473)," and records of a "prior deactivation on or about December 2003." (FOIA Request at 1.) Attached to the FOIA request was a copy of a sworn affidavit from DEA Special Agent Anthony J. Casullo, Jr., dated October 13, 2010, and a DEA Report of Investigation from Agent Casullo dated January 22, 2004. (*Id*., Ex. A ("Casullo Aff.") & Ex. B ("Casullo Rep.".)  Casullo's affidavit states (1) that his "duties as a Special Agent with DEA include[d] the investigation of Rene COBAR and other members of his drug trafficking and money laundering organization," (2) that in "October of 2003, [he] debriefed an individual by the name of Carlos AGUILAR-ALVAREZ . . . regarding the illicit drug trafficking activities of COBAR and his associates" and "[s[hortly thereafter, AGUILAR-ALVAREZ was activated as a Confidential Source (CS) by the DEA and [Casullo] became his controlling agent," (3) that "[f]rom October of 2003 until on or about October of 2009, [Casullo] conducted numerous investigations based on information and assistance provided by AGUILAR-ALVAREZ," (4) that "[o]n February 4, 2010, AGUILAR-ALVAREZ was deactivated by the DEA for providing untruthful information during an investigation initiated in October of 2009," specifically about a "debriefing on December 8, 2009," (5) that "AGUILAR-ALVAREZ was subsequently polygraphed regarding this information and 'failed miserably' according to the polygrapher" and "admitted during the interview with the polygrapher that he had made false statements to the controlling agents regarding the target of the investigation and debriefing on December 8, 2009," and (7) that "[o]n December 29, 2009, an undercover officer purchased three ounces of heroin which an investigation revealed had been supplied to the seller by AGUILAR-ALVAREZ," after which "AGUIILAR-ALVAREZ was determined to be unreliable and untruthful and deactivated as a CS." (Casullo Aff. ¶¶ 3-7.)  Casullo's Report of Investigation from January 2004 does not mention Aguilar-Alvarez by name, but refers to the

2

debriefing of a deactivated confidential source on December 11, 2003, who is identified as CS-01-102375. (Casullo Rep. at 1.)

The DEA's response to plaintiff's FOIA request, dated October 26, 2011, states that "DEA neither confirms nor denies the existence of records relating to Carlos Javier Aguilar-Alvarez, being a confidential source/informant or that he provided information that assisted this agency in any investigation matter." (Compl., Ex. B ("FOIA Response"), at 1.) The DEA justified its response, known as a *Glomar* response, by claiming that the existence of the records sought by plaintiff would be exempt from release pursuant to FOIA Exemption 7(D) (*id*.), which protects from disclosure "law enforcement records" that "could reasonably be expected to disclose the identity of a confidential source [or] . . . information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D).

Plaintiff appealed the denial of his FOIA Request to DOJ's Office of Information Policy. (Compl., Ex. C, at 1 ("FOIA Appeal").) Citing a Ninth Circuit Court of Appeals' decision, *Pickard v. Dep't of Justice*, 653 F.3d 782 (9th Cir. 2011), plaintiff argued that a *Glomar* response was unavailable because Aguilar-Alvarez's "identity as a confidential source was revealed in open court" when he testified against plaintiff at trial in February 2009. (FOIA Appeal at 1-2 (citing *United States v. Cobar*, No. 2:07-cr-0014 (D. Nev. Feb. 2009)).) Aguilar-Alvarez's testimony at Cobar's criminal trial, which plaintiff did not attach to his FOIA appeal but has since provided to the Court (*see* Pl. Opp., Ex. A ("Aguilar-Alvarez Test.")), identified Casullo as his "primary handler" and "supervis[or]," confirmed that he met with Casullo during the investigation of Cobar, and confirmed that he "signed the federal DEA agreement in December of 2003." (Aguilar-Alvarez Test. at 1.)

On May 22, 2012, the Office of Information Policy affirmed DEA's *Glomar* response "on partly modified grounds." (Compl., Ex. D ("Appeal Decision"), at 1.) Instead of Exemption 7(D), the decision relied on Exemption 7(C), which exempts from disclosure "law enforcement records" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). According to the decision, "to the extent that responsive records exist, without consent, proof of death, official acknowledgement of an investigation, or an overriding public interest, disclosure of law enforcement records concerning an individual could be expected to constitute an unwarranted invasion of personal privacy" and "DEA was not required to conduct a search for the requested records" as "any records responsive to [plaintiff's] request would be categorically exempt from disclosure." (*Id*. at 1.)

Following the denial of his appeal, plaintiff filed the complaint that is now before the Court, seeking an order directing defendant to produce the records described in his FOIA request. (Compl. at 1.) Defendant filed a motion for summary judgment, supported by a declaration from William C. Little, Jr. ("Little Decl."), an attorney in the DEA's Office of Chief Counsel, Administrative Law Section. Defendant's motion asserts that it is entitled to summary judgment because its *Glomar* response was appropriate under Exemption 7(C) or, in the alternative, under Exemption 7(D) or 7(F). Plaintiff argues in his opposition that "a *Glomar* response is no longer appropriate," because Aguilar-Alvarez's status as a confidential informant has been publicly acknowledged and officially confirmed by the Cassulo affidavit, Aguilar-Alvarez's trial testimony, and by the district judge in plaintiff's criminal case when he ruled on plaintiff's motion for a new trial (Pl.'s Opp. at 6-9; *id*., Ex. C (Order, *United States v. Cobar*, No. 2:07-cr-0014 (D. Nev. July 14, 2011) ("July 2011 Order")).) In its July 2011 Order, the Nevada district court stated that "Aguilar-Alvarez was working as a confidential source for the

4

LVMPD in August of 2003" and that "[i]n October of 2003, the DEA activated Aguilar-Alvarez in conjunction with its own investigation of [Cobar]."[1] (July 2011 Order, slip op. at 3.)

## ANALYSIS

A *Glomar* response permits an agency to "'refuse to confirm or deny the existence of records,' in limited circumstances." *American Civil Liberties Union v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)). It is "'an exception to the general rule that agencies must acknowledge the existence of information responsive to a FOIA request and provide specific, non-conclusory justifications for withholding that information.'" *Id.* (quoting *Roth v. U.S. Dep't of Justice,* 642 F.3d 1161, 1178 (D.C. Cir. 2011). Generally, a *Glomar* response is "permitted only when confirming or denying the existence of records would itself 'cause harm cognizable under a FOIA exception.'" *Id.* (quoting *Roth*, 642 F.3d at 1178); *see Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 678 F.3d 926, 931 (D.C. Cir. 2012) (citing *Wolf*, 473 F.3d at 374). In addition, the FOIA expressly provides that when "informant records maintained by a criminal law enforcement agency under an informant's name or personal identifier are requested by a third party according to the informant's name or personal identifier, the agency may treat the records as not subject to the requirements of [FOIA], unless the informant's status as an informant has been officially confirmed." 5 U.S.C. § 552(c)(2); *see also Benavides v. Drug Enforcement Admin.*, 968 F.2d 1243, 1246 (D.C. Cir. 1992) (describing § 552(c)(2) as "express legislative authorization for a *Glomar* response"). Conversely, "when an informant's status has been officially confirmed, the requirements of

---

[1] On December 27, 2011, the court vacated the July 2011 Order and filed an amended order, but the same language appears in both orders.

FOIA govern, and the agency must acknowledge the existence of any records it holds." *Benavides*, 964 F.2d at 1243.

"Under the FOIA, the burden is on the agency to sustain its action." *ACLU v. CIA*, 710 F.3d at 427. According to defendant, DEA provides a *Glomar* response "to requests for investigative information related to third-parties where no release authorization or proof of death is provided in order to protect the [third parties'] privacy interests." (Little Decl. ¶ 57.) The DEA takes the "position that merely confirming that any individual is mentioned in a DEA investigative record system or that DEA is in possession of records is a disclosure . . . in and of itself [and] would constitute an unwarranted invasion of an individual's personal privacy" for purposes of Exemption 7(C). (*Id.*) According to defendant, if DEA did conduct a search and refuse to release any responsive records, "DEA would effectively acknowledge the status of any individual[] that is a source of information" (*id.* ¶ 61), while if it were to offer a "no records" response, the requester would be left with the impression that agency staff had searched for but had not located responsive records. (*Id.* ¶ 58.) A *Glomar* response thus serves to protect individuals' privacy interests while preventing a requester from reaching an erroneous conclusion. (*Id.* ¶¶ 58, 61.)

In a typical confidential informant case, defendant's justifications for a *Glomar* response relying on Exemption 7(C) may make perfect sense. But where the identity of a confidential informant has been officially confirmed, the reasons justifying a *Glomar* response no longer apply. *See, e.g.*, *Boyd v. Criminal Division of the U.S. Dep't of Justice*, 475 F.3d 381, 389 (D.C. Cir. 2007) ("Where an informant's status has been officially confirmed, a *Glomar* response is unavailable, and the agency must acknowledge the existence of any responsive records it holds.") (citing *Benavides v. Drug Enforcement Admin.*, 968 F.2d 1243, 1246 (D.C. Cir. 1992));

*Pickard v. Dep't of Justice*, 653 F.3d 782, 788 (9th Cir. 2011) (*Glomar* response unavailable with respect to individual's "status as a confidential informant" where government had "previously officially confirmed . . . status as an informant"); *Memphis Publishing Co. v. Federal Bureau of Investigation*, 879 F. Supp. 2d 1 (D.D.C. 2012) (same); *North v. U.S. Dep't of Justice*, 810 F. Supp. 2d 205, 209 (D.D.C. 2011) (same); *Hidalgo v. FBI*, No. 04-cv-0562, 2005 WL 6133690, at *2 (D.D.C. Sept. 29, 2005) (same).  Here, there can be no question that the identity of the confidential informant has been officially confirmed in light of Casullo's sworn affidavit, the content of Aguilar-Alvarez's public testimony at Cobar's criminal trial, and the district judge's opinion in July 2011 denying Cobar's motion for a new trial.  Accordingly, a *Glomar* response is not available and defendant is not entitled to summary judgment.

The unavailability of a *Glomar* response as to the existence of responsive records does not mean that DEA is required to disclose the content of any particular record.  *See ACLU v. CIA*, 710 F.3d at 432 ("'whether the contents–as distinguished from existence–of the officially acknowledged records may be protected from disclosure'" raises a distinct question (quoting *Wolf*, 473 F.3d at 380)).  Rather, defendant must "proceed to the filing of a *Vaughn* index or other description of the kind of documents the [agency] possesses, followed by litigation regarding whether the exemptions apply to those documents."  *Id*.; *see also Pickard*, 653 F.3d at 788 (after failure of *Glomar* response, government must "take the next step" and "raise whatever exemptions might be appropriate as to the contents of those records, and let the district court

determine whether the contents, as distinguished from the existence, of the officially confirmed records may be protected from disclosure under the DEA's claimed exceptions").[2]

## CONCLUSION

Accordingly, and for the reasons stated above, defendant's motion for summary judgment is denied.  A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date:

---

[2] Having concluded that defendant's motion for summary judgment must be denied because a *Glomar* response is not permitted, plaintiff's other arguments in opposition to defendant's motion are not addressed.