**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | **)** | |
| **RENE OSWALD COBAR,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **Civil Action No. 12-1222 (ESH)** |
| | **)** | |
| **U.S. DEPARTMENT OF JUSTICE,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |
| | **)** | |

**MEMORANDUM OPINION**

Plaintiff Rene Oswald Cobar brings this action against the United States Department of

Justice ("DOJ"), alleging that the Drug Enforcement Administration ("DEA") violated the

Freedom of Information Act, 5 U.S.C. § 552 *et seq*. ("FOIA"), by failing to produce documents

responsive to his FOIA request.  (Compl., Aug. 13, 2012 [ECF No. 12].)  Before the Court is

defendant's third motion for summary judgment.  (Def.'s Renewed Mot. for Summary Judgment,

June 20, 2014 [ECF No. 41] ("Def.'s 3d SJ Mot.").)  For the reasons stated herein, the motion

will be granted in part and denied in part.

**BACKGROUND**

**I.      FACTUAL BACKGROUND**

**A.      Plaintiff's FOIA Request**

In October 2011, plaintiff submitted a request under the FOIA to the DEA seeking

information about a third party, Carlos Javier Aguilar-Alvarez, who had testified against plaintiff

at his criminal trial.  (Compl. at 2; *id*., Ex. A ("FOIA Request"), at 1.)  Plaintiff's request sought

"full disclosure and release of records and information contained in the files of your Agency

concerning . . . Carlos Javier Aguilar-Alvarez," specifically, but not limited to, his "criminal

records," his "activation" in October 2003 and his "deactivation" in February 2009 as a

"confidential informant ("CI")" "(# CS-01-102375)," his "signed" "DEA-CI cooperation

contract (DEA-473)," and records of a "prior deactivation on or about December 2003."  (FOIA

Request at 1.)  Attached to the FOIA request was a copy of a sworn affidavit from DEA Special

Agent Anthony J. Casullo, Jr., dated October 13, 2010, identifying Aguilar-Alvarez as a DEA

confidential source ("CS"), and a DEA Report of Investigation from Agent Casullo dated

January 22, 2004, referencing by the same CS number the deactivation and debriefing of a CS in

December 2003.  (*Id*., Ex. A ("Casullo Aff.") & Ex. B ("Casullo Rep.").)[1]

###### B.    The DEA's Response

The DEA's response to plaintiff's FOIA request was to state that it "neither confirms nor

denies the existence of records relating to Carlos Javier Aguilar-Alvarez, being a confidential

source/informant or that he provided information that assisted this agency in any investigation

---

[1] Casullo's affidavit states (1) that his "duties as a Special Agent with DEA include[d] the investigation of Rene COBAR and other members of his drug trafficking and money laundering organization," (2) that in "October of 2003, [he] debriefed an individual by the name of Carlos AGUILAR-ALVAREZ . . . regarding the illicit drug trafficking activities of COBAR and his associates" and "[s[hortly thereafter, AGUILAR-ALVAREZ was activated as a Confidential Source (CS) by the DEA and [Casullo] became his controlling agent," (3) that "[f]rom October of 2003 until on or about October of 2009, [Casullo] conducted numerous investigations based on information and assistance provided by AGUILAR-ALVAREZ," (4) that "[o]n February 4, 2010, AGUILAR-ALVAREZ was deactivated by the DEA for providing untruthful information during an investigation initiated in October of 2009," specifically about a "debriefing on December 8, 2009," (5) that "AGUILAR-ALVAREZ was subsequently polygraphed regarding this information and 'failed miserably' according to the polygrapher" and "admitted during the interview with the polygrapher that he had made false statements to the controlling agents regarding the target of the investigation and debriefing on December 8, 2009," and (7) that "[o]n December 29, 2009, an undercover officer purchased three ounces of heroin which an investigation revealed had been supplied to the seller by AGUILAR-ALVAREZ," after which "AGUIILAR-ALVAREZ was determined to be unreliable and untruthful and deactivated as a CS."  (Casullo Aff. ¶¶ 3-7.)

matter." (Compl., Ex. B ("FOIA Response"), at 1.) It explained that "no search is conducted in instances where there is a request for information related to the identity of a confidential source or information provided by a source" because all of the information sought would be exempt from release pursuant to FOIA Exemption 7(D). (*Id.*)

### C. Administrative Appeal

Plaintiff appealed the denial of his FOIA Request to DOJ's Office of Information Policy ("OIP"). (Compl., Ex. C, at 1 ("FOIA Appeal").) On May 22, 2012, the OIP affirmed DEA's response "on partly modified grounds." (Compl., Ex. D ("Appeal Decision"), at 1.) Instead of Exemption 7(D), OIP relied on Exemption 7(C), asserting that since "any records responsive to [plaintiff's] request would be categorically exempt from disclosure" under Exemption 7(C), the DEA "was not required to conduct a search for the requested records." (*Id*. at 1.)

## II. PROCEDURAL BACKGROUND

### A. Plaintiff's Complaint

Following OIP's denial of his appeal, plaintiff filed the complaint that is now before the Court, seeking an order directing defendant to produce the records described in his FOIA request.

### B. Defendant's First Motion for Summary Judgment

Defendant first moved for summary judgment on the ground that the DEA's refusal to confirm or deny the existence of records responsive to plaintiff's FOIA request – known as a *Glomar* response[2] – was appropriate under Exemption 7(C) or, in the alternative, under

---

[2] A *Glomar* response permits an agency to respond to a FOIA request by "refus[ing] to confirm or deny the existence of records . . . when confirming or denying the existence of records would itself cause harm cognizable under a FOIA exception." *Am. Civil Liberties Union v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013) (internal quotations omitted).

Exemption 7(D) or 7(F), because confirming or denying the existence of records responsive to

plaintiff's FOIA request would itself cause harm cognizable under Exemption 7(C), 7(D), or

7(F).  (Def.'s Mot. for Summary Judgment at 4-5, Nov. 26, 2012 [ECF No. 22].)  The Court

denied that motion on the ground that the record established that Aguilar-Alvarez's status as a

confidential informant had been publicly acknowledged and officially confirmed, thus

precluding a *Glomar* response.  *See Cobar v. U.S. Dep't of Justice*, 953 F. Supp. 2d 1, 4-5

(D.D.C. 2013) ("*Cobar I*") (citing *Boyd v. Criminal Div. of the U.S. Dep't of Justice*, 475 F.3d

381, 389 (D.C. Cir. 2007) ("Where an informant's status has been officially confirmed, a *Glomar*

response is unavailable, and the agency must acknowledge the existence of any responsive

records it holds.").  Accordingly, the Court directed defendant to "'proceed to the filing of a

*Vaughn* index or other description of the kind of documents the [agency] possesses,  followed by

litigation regarding whether the exemptions apply to those documents.'"  *Id*. at 5(quoting *Am.*

*Civil Liberties Union v. CIA*, 710 F.3d 422, 432 (D.C. Cir. 2013)); *see also Pickard v. Dep't of*

*Justice*, 653 F.3d 782, 788 (9th Cir. 2011) (after failure of *Glomar* response, "government must

take the next step" and "raise whatever other exemptions might be appropriate, and let the

district court determine whether the contents, as distinguished from the *existence*, of the

officially confirmed records may be protected from disclosure under the DEA's claimed

exceptions").  The Court emphasized that "[t]he unavailability of a *Glomar* response as to the

existence of responsive records does not mean that DEA is required to disclose the content of

any particular record."  *Cobar I*, 953 F. Supp. 2d at 5; *see also Am. Civil Liberties Union v. CIA*,

710 F.3d at 432 (after the "collapse of the [agency's] *Glomar* response," "whether the *contents*–

as distinguished from *existence*–of the officially acknowledged records may be protected from

disclosure'" by a particular FOIA exemption is a separate question) (quoting *Wolf v. CIA*, 473 F.3d 370, 380 (D.C. Cir. 2007)).

### C.    DEA's Second Motion for Summary Judgment

Defendant filed its second motion for summary judgment on December 2, 2013, asserting that it was entitled to summary judgment because (1) it had conducted a reasonable search for "confidential source" records and determined that all such records were exempt from disclosure under FOIA Exemptions 7(C), (D) and/or (F); and (2) that it was asserting a *Glomar* response to the request to search for "criminal history records" that were "unrelated" to Aguilar-Alvarez's status as a confidential source because a third-party's criminal history would be categorically exempt from disclosure under FOIA Exemption 7(C).  (Def.'s Renewed Mot. for Summary Judgment, Dec. 2, 2013 [ECF No. 34].)  Upon review, the Court again denied summary judgment, explaining that it was "unable to conclude that the DEA has followed the Court's prior instructions and fulfilled its duties under [the] FOIA" to search for responsive records as opposed to "asserting exemptions under [the] FOIA based solely on the scope and content of plaintiff's request." *Cobar v. U.S. Dep't of Justice*, No. 12-1222, 2014 WL 725767, at \*2 (D.D.C. May 2, 2014) ("*Cobar II*").  Accordingly, the Court directed the DEA to search for responsive records if it had not already done so, and to "produce all responsive records to the Court for *in camera* review," including "any criminal history records pertaining to Aguilar-Alvarez that were [in] DEA's possession at the time plaintiff filed his FOIA request."  (*Id.*)

### D.    DEA's Third Motion for Summary Judgment

On June 20, 2014, defendant filed its third motion for summary judgment, indicating that it had completed its search for responsive records and located a total of 46 responsive pages, all of which were being withheld in full pursuant to FOIA Exemptions 7(C), (D), (E) and/or (F).

(Mem. in Support of Def.'s 3d SJ Mot. at 8, June 20, 2014 [ECF No. 41-1] ("Def.'s 3d SJ

Mem.").)  On October 2, 2014, defendant produced records for the Court's *in camera* review.

(*See* Order at 2, Oct. 3, 2014 [ECF No. 48].)  However, because the records provided to the

Court included records that were not responsive to plaintiff's FOIA request intermingled with the

responsive records, and because there was no index or other indication of how the responsive

documents corresponded to the descriptions and bases for withholding set forth in the declaration

attached to defendant's renewed motion for summary judgment, the Court "declined to review

the records at that time" and ordered defendant "to prepare and file a *Vaughn* index to the

records that it has identified as responsive to plaintiff's FOIA request and an updated declaration

that corresponds to that index."  (*Id.*)  After defendant filed its *Vaughn* index identifying 47

responsive documents, totaling 59 pages (*see Vaughn* Index, Nov. 24, 2014 [ECF No. 50]) and

updated declaration (*see* Third Supp. Decl. of William C. Little, Jr. (REDACTED), Dec. 8, 2014

[ECF No. 55-1] ("Supp. Decl.")), plaintiff renewed his opposition and moved for the release of

most of the withheld documents (Pl.'s Opp., Feb. 2, 2015 [ECF No. 59]), and defendant filed an

updated reply.  (Def.'s Reply, Feb. 19, 2015 [ECF No. 61].) On February 12, 2015, the Court

conducted its *in camera* review of the withheld documents and will now consider the merits of

defendant's third motion for summary judgment.

## ANALYSIS

### I.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence show that "there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  On "summary judgment the inferences to be drawn

from the underlying facts . . . must be viewed in the light most favorable to the party opposing

the motion." *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Judicial*

*Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013).  Where, as here, a plaintiff

is proceeding *pro se,* the Court has "an obligation to construe pro se filings liberally."

*Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002); *Haines v. Kerner,* 404

U.S. 519, 520–21 (1972).

      "FOIA cases typically and appropriately are decided on motions for summary judgment."

*See, e.g.*, *Higgins v. U.S. Dep't of Justice*, 919 F. Supp. 2d 131, 139 (D.D.C. 2013) (internal

quotations omitted).  To obtain summary judgment, a defendant agency must establish that it has

conducted an adequate search for responsive records, that each responsive record that it has

located either has been produced to the plaintiff or is exempt from disclosure, and that it has not

withheld any reasonably segregable information.  *See Weisberg v. Dep't of Justice*, 627 F.2d 365,

368 (D.C. Cir. 1980); *Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 12 (D.C. Cir.

2014).  "[S]ummary judgment may be granted on the basis of agency affidavits if they contain

reasonable specificity of detail rather than merely conclusory statements, and if they are not

called into question by contradictory evidence in the record or by evidence of agency bad faith."

*Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980).

## II.      DEFENDANT'S THIRD MOTION FOR SUMMARY JUDGMENT

      Defendant's third motion for summary judgment asserts that it is entitled to summary

judgment because the DEA has "adequately searched for responsive records" and "properly

applied and explained how they applied the exemptions used to withhold records."  (Def.'s 3d SJ

Mem. at 2.)  Defendant relies on FOIA Exemptions 7(C), (D), and (F) to justify its withholdings.

Those exemptions cover:

records or information compiled for law enforcement purposes, but only to the
extent that the production of such law enforcement records or information . . . (C)
could reasonably be expected to constitute an unwarranted invasion of personal
privacy, (D) could reasonably be expected to disclose the identity of a
confidential source . . . and, in the case of a record or information compiled by
criminal law enforcement authority in the course of a criminal investigation . . . ,
information furnished by a confidential source, (E) would disclose techniques and
procedures for law enforcement investigations or prosecutions, or would disclose
guidelines for law enforcement investigations or prosecutions if such disclosure
could reasonably be expected to risk circumvention of the law, or (F) could
reasonably be expected to endanger the life or physical safety of any individual.

5 U.S.C. § 552(b)(7).  The DEA is also withholding "specific information within the 47

documents that would be subject to redaction" pursuant to these exemptions along with

Exemption 7(E).  (Def.'s Reply at 3-4.)

Plaintiff does not dispute the adequacy of the DEA's search, and he does not object to

defendant's withholding of certain information, but he does challenge some of defendant's

withholdings, all based on his contention that "when or where an informant's status has been

officially confirmed, the Government cannot [] withh[o]ld responsive records.'"  (Pl.'s Opp. at

4).

Accordingly, the primary question for the Court is whether and to what extent an agency

can continue to withhold information pertaining to a confidential source once the identity of that

confidential source has been officially confirmed.

### A.   Exemption 7(D)

The Court will begin with Exemption 7(D), which Congress enacted specifically "to

assist federal law enforcement agencies to obtain, and to maintain, confidential sources, as well

as to guard the flow of information to these agencies."  *See Parker v. Dep't of Justice*, 934 F.2d

375, 380 (D.C. Cir. 1991).  Exemption 7(D) protects two distinct types of information: (1)

information "could reasonably be expected to disclose the identity of a confidential source"; and

(2) "information furnished by a confidential source."  5 U.S.C. § 552(b)(7)(D).  As addressed in

greater detail *infra*, there is no question that the documents defendant has withheld, with one

exception, contain the type of information normally protected by Exemption 7(D).  The more

difficult question is whether the scope of 7(D)'s protection is altered by the fact that the identity

of the confidential source has been officially confirmed.  To the extent plaintiff is arguing that

public knowledge of a confidential source's *identity* precludes application of 7(D) to protect

*information provided by* that source, that proposition is clearly wrong.  Exemption 7(D)

expressly protects each independently of the other.  Moreover, for information or a record to lose

its protected status based on public disclosure, the information must truly be in the public domain

and there must be an exact identity between the publicly disclosed information or document and

the information or document sought under the FOIA.  *See, e.g., Students Against Genocide v.*

*Dep't of State*, 257 F.3d 828, 835-36 (D.C. Cir. 2001) (agency did not forfeit right to claim

exemption for some photographs by releasing others to plaintiff); *Ancient Coin Collectors Guild*

*v. U.S. Dep't of State*, 641 F.3d 504, 510 (D.C. Cir. 2011) ("as a simple factual matter,

publication of part of a document does not put the rest into the public domain"); *Wolf v. CIA*, 473

F.3d at 378 ("a plaintiff asserting a claim of prior disclosure must bear the initial burden of

pointing to specific information in the public domain that appears to duplicate that being

withheld" (internal quotations omitted)); *see also Irons v. FBI*, 880 F.2d 1446, 1447-48 (1st Cir.

1989) (information provided by FBI's confidential sources remains exempt from disclosure

under Exemption 7(D) even though the sources revealed other information at public trials).

The more difficult question is whether official confirmation of the identity of a

confidential source requires disclosure of information in agency records that would identify or

tend to identify that source.  While the general rule on public disclosure suggests that such

information might no longer be protected, "Exemption 7(D) differs from other FOIA exemptions

in that its applicability depends not on the specific factual contents of a particular document;

instead, the pertinent question is whether the information at issue was furnished by a

'confidential source' during the course of a legitimate criminal law investigation."  *Lesar v. U.S.*

*Dep't of Justice*, 636 F.2d 472, 492 (D.C. Cir. 1980).  Recognizing this difference, and

considering the text of Exemption 7(D), its legislative history, and the caselaw, the D.C. Circuit

held that the public disclosure of the identity of a confidential source does not waive Exemption

D's applicability.  *Parker v. Dep't of Justice* 934 F.2d at 380 (citing *Irons*, 880 F.2d at 1456-57

(public testimony by "confidential sources" does not waive the FBI's right to invoke Exemption

7(D) to withhold the identity of a confidential source or information furnished by that source))[3];

*see also Reiter v. Drug Enforcement Admin.*, No. 96-cv-0378, 1997 WL 470108, at *6 (D.D.C.

Aug. 13, 1997) ("once an informant's confidentiality has been established, almost nothing can

eviscerate Exemption 7(D) protection" and "an agency may continue to withhold information

from a source even after the source has been revealed to the requester or when the requester

---

[3] The Court in *Parker* explained that it arrived at this conclusion because: (1) "the language of the Exemption explicitly allows the government to withhold information furnished by a confidential source and the identity of the source, but says nothing at all about waiver" or the need to "balance interests"; (2) "the extensive legislative history of Exemption 7(D) indicates that Congress intended we interpret [it] literally" so as "to provide a broad exemption for law enforcement"; and (3) decisions in other circuits "have used broad language to describe the application of the Exemption and have interpreted it to apply irrespective of the subsequent public identification of the source or portions of the information." *Parker*, 934 F.2d at 380 (internal quotations omitted).

knows the source's identity"), *aff'd*, No. 97-5246, 1998 WL 202247 (D.C. Cir. 1998); *Plazas-Martinez v. Drug Enforcement Admin.*, 891 F. Supp. 1, 4 (D.D.C. 1995) ("exemption (b)(7)(D) applies to information given by an informant who was confidential at the time, even if the informant later testifies at trial").[4]

Accordingly, the Court rejects plaintiff's contention that official confirmation of a confidential source in any way diminishes the protection offered by Exemption 7(D).[5]

### B.   DEA's Application of Exemption 7(D) to Withhold Particular Documents

Having concluded that the scope of Exemption 7(D) is not diminished by the fact that the identity of a confidential source has been officially confirmed, the Court will now consider whether defendant has properly applied that exemption to the documents it is withholding.  As explained *infra*, with one possible exception, defendant has properly applied Exemption 7(D) to withhold the responsive records.

---

[4] A number of other courts have come to the same conclusion. *See Lame v. U.S. Dep't of Justice*, 654 F.2d 917, 925 (3d Cir. 1981) ("Since all the information given by a confidential source is exempt, it follows that the release of a portion of such information does not lift the blanket exemption.  Courts have consistently held that the subsequent disclosure of information originally given in confidence does not render non-confidential any of the information originally provided."); *Radowich v. U.S. Atty., Dist. of Maryland*, 658 F.2d 957, 960 (4th Cir. 1981) ("district court erred in holding that the first clause of the exemption was inapplicable in this case because the identities of the confidential sources were known"); *Neely v. FBI*, 208 F.3d 461, 466 (4th Cir. 2000) (Exemption 7(D) can be claimed to protect the identities of confidential sources whose identities have previously been disclosed); *Kimberlin v. Dep't of Treasury*, 774 F.2d 204, 208-09 (7th Cir. 1985) ("Assuming *arguendo* that this information was in fact disclosed, this disclosure did not waive any claims of confidentiality under FOIA.  The disclosure of information given in confidence does not render non-confidential any of the information originally provided."); *L & C Marine Transp., Ltd. v. United States*, 740 F.2d 919, 924-25 (11th Cir. 1984) ("The per se limitation on disclosure under 7(D) does not disappear if the identity of the confidential source later becomes known through other means.").

[5] Neither *Pickard v. Dep't of Justice*, 653 F.3d at 788, nor *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161 (D.C. Cir. 2011), the two cases plaintiff relies upon (*see* Pl.'s Opp. at 4), addresses this issue.

### 1.      Properly Withheld Documents

All of the following documents include information that would identify the confidential

source, information that would tend to identify the confidential source, and/or information

provided by the confidential source that is protected from disclosure by Exemption 7(D).

#### a.      DEA Form 6 & 6a, Report of Investigation Form

DEA Form 6 & 6a are "report of investigation forms" used by the DEA "to memorialize

investigation and intelligence activities, and information." (Supp. Decl. ¶ 17.)  Form 6, the

initial page, is a multi-block form with 15 numbered blocks plus a narrative section where

"investigative and intelligence information is recorded." (*Id.*)  Form 6a, the continuation page,

"consists of six (6) numbered blocks . . . followed by a narrative section." (*Id.*)  Four of the

documents defendant has withheld are Report of Investigation forms.  (Supp. Decl. ¶ 13 & nn.4-

7)  The first and second documents are "Quarterly Management Review[s] of CS [(Confidential

Source)] Utilization," a report that is prepared by the "First Line Supervisor of the controlling

agent," and "details the accomplishments of the CS during the quarter" (Supp. Decl. ¶ 25;

*Vaughn* Index at 1-15 (pp. 1-16[6])); the third document reports on a "deactivation" of the

confidential source (*Vaughn* Index at 16 (p. 17)); and the fourth document reports on "a

debriefing and reactivation" of the confidential source, including "drug related information

acquired by thoroughly questioning the [confidential source]."[7]  (Supp. Decl. ¶ 26; *Vaughn* Index

---

[6] The page numbers in this and similar citations refer to the Bates stamp numbers the DEA put on the responsive pages.

[7] Plaintiff specifically requests release of the information on this form that pertains to the confidential source's "knowledge of drug proceeds" and "knowledge of financial criminal information to include payment for drugs" (Pl.'s Opp. at 8), which is clearly information provided by a confidential source.

at 17 (pp. 18-19).)  As is apparent from the description of these documents in defendant's

declaration and *Vaughn* index, and as confirmed by the Court's *in camera* review, these

documents include information that would disclose the identity of the confidential source,

information that would tend to identify the confidential source, and information provided by the

confidential source and thus protected from disclosure by Exemption 7(D).

### b.      Form 512, Confidential Source Establishment Form

DEA Form 512, the Confidential Source Establishment Form, is a form that is

"completed at the time a source is established by a DEA office."  (Supp. Decl. ¶ 20.)  There are

two Form 512s included in the withheld documents, each two pages long.  (Supp. Decl. ¶ 13 &

n.8; *Vaughn* Index at 18-19 (pp. 20-23).)  Plaintiff specifically seeks the release of the

information in Block 32 on both of these forms (Pl.'s Opp. at 4-5), which is the block for the

confidential source's "Criminal History and other information re active warrants" (Supp. Decl.

¶¶ 20, 21.)  Plaintiff strongly urges the Court to order the release of all information pertaining to

Aguilar's criminal history.  However, a person's criminal history is information that could tend

to reveal the identity of a confidential source.  Accordingly, defendant has properly withheld this

information under Exemption 7(D).

### c.      DEA Form 512b, Confidential Source Annual Suitability Report and Recommendation

DEA Form 512b, the "Confidential Source Annual Suitability Report and

Recommendation," is a form that is "completed on an annual basis during a source's activation."

(Supp. Decl. ¶ 22.)  There are five Form 512bs included in the withheld documents, each two

pages long.  (Supp. Decl. ¶ 13 & n.9; *Vaughn* Index at 20-24 (pp. 24-33).)  Defendant's

declaration includes a detailed description of the type of information included in each block of

the form (*see* Supp. Decl. ¶ 22), and plaintiff specifically seeks release of the following

information: date of activation (Block 4); payments and other financial information pertaining to

the source (Blocks 6-7); criminal history information (Blocks 8, 8a, and 8b); assessments of the

source's conduct and behavior (Blocks 9, 9a, 10a, 12 and 12a), and the assessment of the

source's credibility and reliability (Block 15).  (Pl.'s Opp. at 6.)  It is apparent from the

description of the information at issue that all of it either would tend to reveal the identity of a

confidential source or information provided by a confidential source.  Accordingly, all of this

information is protected from disclosure by Exemption 7(D).

> d.    **DEA Form 512d, Confidential Source Deactivation Report**

DEA Form 512d, the "Confidential Source Deactivation Report, is the form that

"memorializ[es] the deactivation of a confidential source."  (Supp. Decl. ¶ 23.)  Defendant has

withheld one Form 512d.  (Supp. Decl. ¶ 13 & n.10; *Vaughn* Index at 25 (pp. 34-35).)

Defendant's declaration includes a detailed description of the type of information included in

each block of the form (Supp. Decl. ¶ 23), and plaintiff seeks release of the following

information: date of deactivation (Block 3); reason for deactivation (Block 5); assessment of the

reasons for the source's cooperation (Block 6); cases in which the source testified and an

assessment of source's performance (Block 7); payments, other financial information, judicial

consideration or other benefits to the source (Block 8); and whether the source was notified of

the deactivation, date and method (Block 10).  Again, it is apparent from the description of the

information at issue that all of it either would tend to reveal the identity of a confidential source

or information provided by a confidential source.  Accordingly, all of this information is

protected from disclosure by Exemption 7(D).

> e.    **Criminal History Documents**

Defendant has withheld three documents the primary content of which is the criminal history of the confidential source:  (1) a memorandum with the subject line "disposition of arrests" that "was generated to document an arrest" of the confidential source (Supp. Decl. ¶ 13 & n.12; Supp. Decl. ¶ 32; *Vaughn* Index at 33 (p. 50)); (2) the response to an query of the Narcotics and Dangerous Drug Information System ("NADDIS") which is made "to determine whether an individual has been identified as being of investigative interest, such as a suspect, criminal associate, target or witness, in any investigation" (Supp. Decl. ¶ 13 & n.13, ¶ 29; *Vaughn* Index at 34 (p. 51)); and (3) the response to a query of a system administered by the Federal Bureau of Investigation, Criminal Justice Information Systems, National Crime Information Center ("NCIC")" ("JABS") for a "criminal history check." (Supp. Decl. ¶ 13 & n.15, ¶ 28; *Vaughn* Index at 37 (p. 56).)  As the Court has previously explained, the criminal history of a confidential source is protected from disclosure by Exemption 7(D) as it is information that might tend to reveal the identity of a confidential source.  Accordingly, the information in these documents is protected under Exemption 7(D).

        **f.**        **Documents Pertaining to the Confidential Source's Family**

Defendant has withheld five documents that pertain to the family of the confidential source (1) two "DEA Threat Assessments," which are documents that were "prepared in association with application for the Significant Public Benefit Parole extension requested by DEA that pertain to family members of Aguilar" and which include a "synopsis of events that justified granting the continuation of residency in the United States for family members."  (Supp. Decl. ¶ 13 & n.14, ¶ 30; *Vaughn* Index at 35-36 (pp. 52-55)); and (2) three memoranda from U.S. Immigration and Customs Enforcement to the DEA "setting forth the requirements to maintain the Significant Public Benefit Parole for family members of Aguilar."  (Supp. Decl. ¶

13 & n.16, ¶ 31; *Vaughn* Index at 38-40 (pp. 57-59).)  The type of information in these

documents clearly falls within Exemption 7(D) as its release would tend to reveal the identity of

the confidential source.[8]

### 2.      Documents To Be Released

DEA Form 473, the "Confidential Source Agreement," is the document "used to

memorialize the conditions under which an individual will function as a DEA coded source."

(Supp. Decl. ¶ 24.)  It "contains the operable provisions of the agreement and the signature of the

source that is witnessed by a DEA agent or other third-party is included at the end of the

agreement."  (*Id*.)  Defendant has withheld seven of these agreements (in both English and

Spanish).  (Supp. Decl. ¶ 13 & n.11; *Vaughn* Index at 26-32 (pp. 36-49).)  Plaintiff seeks access

to these documents in their entirety.  Based on defendant's declaration and *Vaughn* index, and

the Court's *in camera* review, the Court is not persuaded that all of the information in these

documents has been properly withheld.  Specifically, it does not appear that any of the generic

conditions set forth in the Confidential Source Agreement, standing alone, qualify for protection

under Exemption 7(D).  Defendant appears to rely solely on the fact that these documents

"relate" to a confidential source, but that is not the applicable standard.  Nor does defendant

provide any explanation for why this generic information would be exempt from disclosure

under any exemption.  Accordingly, defendant will be ordered to provide plaintiff with redacted[9]

copies of these documents.

---

[8] Plaintiff does not appear to challenge defendant's withholding of these documents.

[9] Defendant may redact from these documents CS identifier codes, CS initials, third-party
identifiers, signatures of law enforcement personnel, and any other information that has been
specifically identified on the documents the Court reviewed *in camera* or in the *Vaughn* index as
protected by a particular exemption.  (*See Vaughn* Index at 26-32 (pp. 36-49).)

**C.      Segregability**

The Court is satisfied by defendant's *Vaughn* index and supplemental declaration, and by

its own *in camera* review, that there is no reasonably segregable, non-exempt information in the

properly withheld documents.

**CONCLUSION**

Accordingly, and for the reasons stated above, defendant's motion for summary judgment

will be granted in part and denied in part, plaintiff's motion for the release of documents will be

granted in part and denied in part, and defendant will be ordered to release those documents not

properly withheld.  A separate Order accompanies this Memorandum Opinion.


/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge


Date:    February 27, 2015